SANFORD JAY ROSEN – 062566
ERNEST GALVAN – 196065
MARC J. SHINN-KRANTZ – 312968
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: srosen@rbgg.com
 egalvan@rbgg.com
 mshinn-krantz@rbgg.com

JONATHAN P. PICARD – Fla. Bar No. 105477
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523
Facsimile: (561) 828-8166
Email: jpicard@humanrightsdefensecenter.org
* *Pro Hac Vice* Application to be filed

Attorneys for Plaintiff
HUMAN RIGHTS DEFENSE CENTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SONOMA; EDDIE ENGRAM, Sheriff, individually and in his official capacity; MELISSA PARMENTER, Detention Division Operations Captain, individually and in her official capacity; and JOHN AND JANE DOES 1-10, Staff, individually and in their official capacities,<br><br>    Defendants. | Case No. 3:25-cv-00361<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983, CALIFORNIA CIVIL CODE § 52.1, AND THE CALIFORNIA CONSTITUTION** |

Case No. 3:25-cv-00361

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983, CALIFORNIA CIVIL CODE § 52.1, AND THE CALIFORNIA CONSTITUTION

# INTRODUCTION

1. Plaintiff Human Rights Defense Center ("HRDC" or "Plaintiff") brings this action to enjoin Defendants from censoring publications and correspondence that it mails to incarcerated persons at the Sonoma County Main Adult Detention Facility (the "Detention Facility"). Defendants have adopted and implemented mail policies, practices, and customs that unconstitutionally prohibit delivery of publications and correspondence mailed by Plaintiff to persons incarcerated at the Detention Facility, and that deny due process of law to senders, like Plaintiff, whose mail is censored, by failing to provide adequate notice and an opportunity to challenge each instance of censorship. Defendants' actions violate Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution; Article I, Section 2 and Article I, Section 7 of the California Constitution; and the Bane Act, California Civil Code § 52.1. Plaintiff seeks injunctive and declaratory relief, and damages in an amount to be proven at trial pursuant to 42 U.S.C. § 1983 and California law.

# JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1331 (federal question), as this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 (civil rights), as this action seeks redress for civil rights violations under 42 U.S.C. § 1983.

3. Venue is proper under 28 U.S.C. § 1391(b). At least one Defendant resides within this judicial district and the events giving rise to the claims asserted herein all occurred within this judicial district.

4. Plaintiff's claims for relief under federal law are brought pursuant to 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the First and Fourteenth Amendments to the United States Constitution and laws of the United States.

5. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983, CALIFORNIA CIVIL CODE § 52.1, AND THE CALIFORNIA CONSTITUTION

Civil Procedure, as well as nominal and compensatory damages, against all Defendants, and punitive damages against the individual defendants in their personal capacities.

6. Plaintiff's claim for attorneys' fees and costs for its federal claims is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as Plaintiff's claims under federal law.

8. Plaintiff's claims for relief under state law are predicated upon the Bane Act (Cal. Civ. Code § 52.1), which authorizes actions to protect the exercise or enjoyment of rights secured under federal or California law, as well as upon the direct causes of action to enforce constitutional rights guaranteed under Article I, Section 2 and Article I, Section 7 of the California Constitution.

9. Plaintiff's claim for attorneys' fees and costs under state law is predicated upon California Civil Code § 52.1, which authorizes the award of attorneys' fees and costs in an action brought under that statute, and California Code of Civil Procedure § 1021.5, which authorizes the award of attorneys' fees and costs to successful plaintiffs whose actions vindicate important rights affecting the public interest.

10. Plaintiff is informed, believes, and based thereon alleges that the individual Defendants as described herein acted with reckless disregard for Plaintiff's rights and/or with the intent to injure, vex, annoy and harass Plaintiff, and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights with the intention of causing Plaintiff injury and depriving it of its constitutional rights. As a result of the foregoing, Plaintiff seeks compensatory and punitive damages against the individual Defendants.

**EXHAUSTION OF PRE-LAWSUIT PROCEDURES FOR STATE LAW CLAIMS**

11. Plaintiff submitted a state tort claim for damages to Defendant COUNTY OF SONOMA on July 18, 2024, and an amended claim on August 14, 2024. Defendant

COUNTY OF SONOMA notified Plaintiff that the amended claim was rejected by letter dated August 30, 2024.

**PARTIES**

12. Plaintiff HUMAN RIGHTS DEFENSE CENTER is a not-for-profit charitable organization recognized under § 501(c)(3) of the Internal Revenue Code, incorporated in the state of Washington and with principal offices in Boynton Beach, Florida. For over thirty-four years, HRDC has focused its mission on public education, advocacy and outreach to incarcerated persons and the public about the economic and social costs of prisons to society. HRDC accomplishes its mission through advocacy, litigation, and the publication and/or distribution of books, magazines, and other information concerning prisons and prisoner rights. Prison Legal News is a wholly-owned project and publishing arm of HRDC. Through its publishing project, HRDC engages in core protected speech and expressive conduct on matters of public concern including: the operation of correctional facilities; prison and jail conditions; the health and safety of incarcerated persons; and the constitutional and human rights of incarcerated persons. HRDC publishes and distributes two monthly magazines covering corrections and criminal legal news and analysis. HRDC also publishes and distributes books about the criminal justice system and legal issues affecting incarcerated persons, which HRDC distributes by mail to incarcerated persons, lawyers, courts, libraries, and the public throughout the United States.

13. Defendant COUNTY OF SONOMA (the "County") is a political subdivision of the State of California organized and existing under the laws of California. The County is, and at all relevant times herein was, responsible for the policies, procedures, customs, and practices of the Sonoma County Sheriff's Office and its employees and agents. The Sonoma County Sheriff's Office is and was responsible for adopting and implementing mail policies, procedures, practices, and customs governing incoming mail for incarcerated persons at the Detention Facility.

14. Defendant EDDIE ENGRAM is the Sheriff of Sonoma County, and he has

held that position since January 2023. Defendant ENGRAM is employed by, and is an agent of, the County and the Sonoma County Sheriff's Office. He is responsible for overseeing the management and operations of the Detention Facility. He is responsible for the hiring, screening, training, supervision, discipline, counseling and control of the personnel at the Detention Facility who interpret and apply mail policies, procedures, practices, and customs. As Sheriff, Defendant ENGRAM is a final policymaker for the County with respect to the operation of the Detention Facility, and he is responsible for policies, procedures, practices, and customs governing incoming mail for incarcerated persons. He is sued in his individual and official capacities.

15. Defendant MELISSA PARMENTER is the Operations Captain for the Sonoma County Sheriff's Detention Division, and she has held this position since January 2023. PARMENTER is employed by, and is an agent of, the County and the Sonoma County Sheriff's Office. She is responsible for overseeing the management and operations of the Detention Facility. She is responsible for the hiring, screening, training, supervision, discipline, counseling, and control of the personnel at the Detention Facility who interpret and apply mail policies, procedures, practices, and customs. As Operations Captain, PARMENTER is a policymaker for the County with respect to operation of the Detention Facility, and she is responsible for policies, procedures, practices, and customs governing incoming mail for incarcerated persons. She is sued in her individual and official capacities.

16. The true names and identities of Defendants DOES 1 through 10 are presently unknown to HRDC. Each of Defendants DOES 1 through 10 are or were employed by and are or were agents of the County during some or all of the relevant timeframe. Each of Defendants DOES 1 through 10 were personally involved in the adoption and/or implementation of the mail policies, procedures, practices, and customs at the Detention Facility, and/or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of the Detention Facility staff who interpret and implement these mail policies, procedures, practices, and customs. They are

sued in their individual and official capacities.  HRDC will seek to amend this Complaint when the true names and identities of Defendants DOES 1 through 10 have been ascertained.

17.     At all times material to this action, the actions of all Defendants as alleged herein were taken under the authority and color of state law.

18.     At all times material to this action, all Defendants were acting within the course and scope of their employment as agents and/or employees of the County.

**FACTUAL ALLEGATIONS**

19.     For more than thirty-four years, the focus of HRDC's mission has been public education, advocacy and outreach on behalf of, and for the purpose of assisting, incarcerated persons who seek legal redress for infringements of their constitutionally guaranteed and other basic human rights.  HRDC's mission, if realized, has a salutary effect on public safety.

20.     To accomplish its mission, HRDC publishes and distributes books, magazines, and other materials containing news and analysis about prisons, jails and other detention facilities, the rights of incarcerated persons, court rulings, management of prison facilities, prison and jail conditions, and other matters pertaining to the rights and/or interests of incarcerated persons.  HRDC's publications contain political speech and social commentary, which are core First Amendment rights and are entitled to the highest protection afforded by the United States Constitution and the California Constitution.

21.     Sending publications through the mail to incarcerated persons is essential to accomplishing the mission of HRDC.  The primary aim of HRDC is to communicate with incarcerated persons about developments in the law and protection of one's health and personal safety while in prison or jail.  Reading materials enable incarcerated persons to engage in productive activity rather than sitting idle, thus helping to avoid conflicts and incidents of violence in correctional facilities and encouraging lawful methods of dispute resolution.  In addition, reading allows incarcerated persons to keep their minds sharp, helping them prepare to become productive citizens when released back into society.

22. HRDC publishes and distributes an award-winning monthly magazine titled *Prison Legal News: Dedicated to Protecting Human Rights* ("*Prison Legal News*"), which contains news and analysis about correctional facilities, the rights of incarcerated persons, court opinions, prison and jail conditions, excessive force, and religious freedom. *Prison Legal News* is published on newsprint bound by two small staples, and is 72 pages long.

23. HRDC also publishes and distributes a second monthly magazine titled *Criminal Legal News: Dedicated to Protecting Human Rights* ("*Criminal Legal News*"), which contains news and analysis about individual rights, court rulings, and other criminal legal-related issues. *Criminal Legal News* is also published on newsprint bound by two small staples, and was 48 pages long, but has more recently expanded to 56 pages long.

24. HRDC also publishes and/or distributes several different soft-cover books on criminal justice, health, and legal issues that are of interest to incarcerated persons and others. HRDC publishes and distributes the *Prisoners' Guerilla Handbook: A Guide to Correspondence Programs in the United States and Canada* ("*Prisoners' Handbook*"), which provides information on enrolling at accredited higher educational, vocational and training schools. HRDC does not publish, but is the sole national distributor of *Protecting Your Health and Safety* ("*PYHS*"), which describes the rights, protections and legal remedies available to persons concerning their health and safety while they are incarcerated.

25. In addition to its publications, HRDC also communicates with incarcerated persons through the United States Postal Service by mailing them: (a) informational brochure packets, which contain a brochure and subscription order form, a book list, and a published books brochure (each of which is a single page); (b) copies of judicial opinions of import to incarcerated persons, which are marked "Court Ruling;" and (c) letters that provide pertinent information about HRDC's publications and related topics, including subscription renewal letters and follow-up letters to ascertain whether HRDC's mailings have been delivered as addressed. HRDC encloses a self-addressed, stamped envelope with its informational brochure packets and subscription renewal letters, but does not

1  enclose extra envelopes or stamps with the informational brochure packets, judicial
2  opinions, or other letters that it mails to incarcerated persons.
3      26.   Since 1990, HRDC has sent its publications and books by mail to
4  incarcerated persons and law librarians in more than 3,000 correctional facilities in all fifty
5  states, including at death row housing units and "supermax" prisons, including the federal
6  Administrative Maximum Facility at Florence, Colorado, which is known as the most
7  secure prison in the United States.  The publications and books that HRDC distributes are
8  mailed to hundreds of persons incarcerated in California jails and prisons, including at San
9  Diego County's Central Jail, Vista Detention Facility, East Mesa Detention Facility, South
10 Bay Detention Facility, and George F. Bailey Detention Facility; the Los Angeles County
11 Jails, including the Twin Towers Correctional Facility; Orange County's Theo Lacy
12 Facility; San Bernardino County's West Valley Detention Center; Riverside County's
13 Larry D. Smith Correctional Facility; Sacramento County's Rio Cosumnes Correctional
14 Center; the Fresno County Jail; the Humboldt County Correctional Facility; the Santa
15 Clara County Main Jail; Alameda County's Santa Rita Jail and Glenn E. Dyer Detention
16 Facility; Contra Costa County's Martinez Detention Facility; the Butte County Jail; the
17 San Joaquin County Jail; the Ventura County Jail; the San Luis Obispo County Jail; the
18 Santa Barbara County Jail; the Tulare County Main Jail; the Tehama County Jail; Placer
19 County's Auburn Jail; the Napa County Jail; the Madera County Jail; and at the 32 prisons
20 run by the California Department of Corrections and Rehabilitation ("CDCR") and the
21 California Department of State Hospitals' ("DSH") secure hospital facilities throughout the
22 state.  In its more than 34-year history, HRDC is not aware of and has never been notified
23 of any security incident caused by any of its publications or correspondence at any jail,
24 prison, or other detention facility.
25     27.   The Sonoma County Sheriff's Office Custody Manual, dated December 30,
26 2024 ("Custody Manual"), is available on the public website of the Sonoma County
27 Sheriff's Office at https://www.sonomasheriff.org/policies-and-training (last visited
28 January 9, 2025), which includes a hyperlink to a PDF of the Custody Manual at

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES UNDER THE CIVIL
RIGHTS ACT, 42 U.S.C. § 1983, CALIFORNIA CIVIL CODE § 52.1, AND THE CALIFORNIA CONSTITUTION

https://static1.squarespace.com/static/542ec317e4b0d41ade8801fb/t/67747a4fa9dce32351a320bf/1735686741151/RELEASE_20241230_T152025_Sonoma+County+Sheriff%27s+Office+Custody+Manual.pdf (last visited January 9, 2025). Defendants' current policy on incoming mail for persons incarcerated at the Detention Facility, Policy 1009 ("Mail Policy"), is recorded on pages 378 through 382 of the Custody Manual.

28. Defendants' Mail Policy provides, in pertinent part:

> When mail is found to be inappropriate in accordance with the provisions of this policy or when an incarcerated person is sent material that is not prohibited by law but is considered contraband by the facility, the material may be returned to the sender or held in the incarcerated person's property to be given to the incarcerated person upon release.
>
> …
>
> Notices should be sent to the sender of censored correspondence or publications, even when the sender is the editor or publisher. A single notification may be sent if the publication is received by multiple incarcerated persons.
>
> …
>
> Unless otherwise in conflict with this policy and prohibited by the Facility Manager, incarcerated persons are permitted to purchase, receive, and read any book, newspaper, periodical, or writing accepted for distribution by the U.S. Postal Service (15 CCR 1066(a)).
>
> Publications, magazines, or newspapers shall be accepted only if they are mailed directly from the publisher to a named incarcerated person.
>
> …
>
> The Office may reject magazines, periodicals, and other materials that may inhibit the reasonable safety, security, and discipline in the daily operation of this facility. Generally, books, newspapers, and magazines are accepted only if they are sent directly by the publisher. Materials that may be rejected include but are not limited to (15 CCR 1066(a)):
>
> • Materials that advocate violence or a security breach.
>
> • Literature that could incite racial unrest.
>
> • Sexually explicit material, including pornographic magazines, nude pictures, or pictures or descriptions of sexually explicit activities.
>
> • Obscene publications or writings and mail containing information concerning where or how such matter may be obtained; any material that would have a tendency to incite murder, arson, riot, violent racism, or any other form of violence; any material that would have a tendency to incite crimes against children; any material concerning unlawful gambling or

unlawful lottery; any material containing information on the manufacture or use of weapons, narcotics, or explosives or any other unlawful activity.

- Material that could lead to sexual aggression or an offensive environment for incarcerated persons.

- Material that could create a hostile or offensive work environment.

- Any material with content that could reasonably demonstrate a legitimate government interest in rejecting the material.

Staff shall notify the Watch Commander whenever a decision is made to reject books, magazines, or periodicals. The Facility Manager or the authorized designee will be responsible for making the final decision as to the specific magazines, periodicals, and other materials that will be prohibited within this facility.

29. In addition to Defendants' Mail Policy, another document entitled Detention Facilities Mail Guidelines ("Mail Guidelines") is available on the public website of the Sonoma County Sheriff's Office at https://www.sonomasheriff.org/inmate-mail-guidelines (last visited December 19, 2024), which includes a hyperlink to a PDF of the Mail Guidelines at

https://static1.squarespace.com/static/542ec317e4b0d41ade8801fb/t/5e961fb66872ea5a8c374e9d/1586896822388/mail+guidelines.pdf   (last visited December 19, 2024). Defendants' Mail Guidelines provide, in pertinent part:

> New books deemed to be appropriate will be accepted from Amazon and Barnes & Noble only. **Used books, hardcover books and books with spiral bindings will not be accepted**. Magazines and other publications including periodicals and newspapers that are deemed to be appropriate will be accepted from the publisher.

30. Defendants' Mail Policy is unconstitutional on its face and as applied, and is unduly broad and vague. This is especially true because the books and magazines published and/or distributed by HRDC cover topics of great public concern and contain core protected speech, including political speech and social commentary, and educational information relating to the rights of incarcerated persons, pertinent legal cases, and incarcerated persons' health and safety, and are thus entitled to the highest protection afforded by the First Amendment to the United States Constitution and the California Constitution. There is no legitimate penological justification for Defendants to refuse to

accept books and other publications for delivery at the Detention Facility unless they are "sent directly by the publisher," and the grounds whereby Defendants may reject mailed publications listed in Defendants' Mail Policy are overly broad and/or too vague for a sender to understand what is prohibited and what is permissible. Defendants' Mail Policy also does not provide for any appeals process by which a sender may challenge a decision by Defendants to reject publications or other mailings for delivery to incarcerated persons at the Detention Facility.

31. Defendants' Mail Guidelines are unconstitutional on their face and as applied. By restricting all books not sent by vendors Amazon and Barnes & Noble, Defendants ban books sent by HRDC to prisoners at the Detention Facility. Accordingly, Defendants' Mail Guidelines also violate HRDC's rights to free speech afforded by the First Amendment to the United States Constitution and the California Constitution.

32. Furthermore, Defendants fail to provide senders of censored mail notice and an opportunity to appeal censorship decisions. Thus, such policies and practices violate HRDC's Fourteenth Amendment rights to due process.

33. Between October 2023 and October 2024, HRDC sent books, magazines, court rulings, informational brochures, and correspondence to individuals confined at the Detention Facility. During that time period, forty-seven (47) of those items were returned to the HRDC by the Detention Facility. The items returned were addressed to individuals confirmed to still be in custody of the Detention Facility on the day HRDC received the returned mail.

34. The forty-seven (47) returned items consisted of: twenty-seven (27) informational brochures; nine (9) issues of *Prison Legal News*; eight (8) issues of *Criminal Legal News*; and three (3) follow-up letters.

35. Many of the rejected items were returned to HRDC marked in various ways, including the abbreviations "RTS," "MTC," "NIC," and "ANK" handwritten in ink, and/or with an ink stamp containing the words "RETURN TO SENDER NO INMATE SOLICITATIONS."

36. Defendants failed to provide HRDC with notice and an opportunity to appeal these censorship decisions. Other than the vague markings on the outside of items returned via the United States Postal Service's Return to Sender service, Defendants did not provide HRDC with notice of the reason any mailing was rejected. Nowhere on the returned items of mail was notice provided of a right to challenge the censorship decision, or any information on whether or how HRDC could appeal Defendants' decision to refuse to deliver the publication or correspondence to the intended recipient. Furthermore, Defendants did not return any of the two hundred and three (203) additional items that were properly addressed to people incarcerated at the Detention Facility leaving HRDC without any information as to whether those items were censored and why, or if they were delivered why the Detention Facility delivered only those items but not others.

37. Because of Defendants' actions as described above, HRDC has suffered damages, and will continue to suffer damages, including, but not limited to: the suppression of HRDC's speech; the impediment of HRDC's ability to disseminate its message; frustration of HRDC's non-profit organizational mission; the loss of potential subscribers and customers; and, the inability to recruit new subscribers and supporters; the loss of reputation; and the cost of printing, handling, mailing, and staff time, among other damages.

38. Defendants, and other agents of the Detention Facility, are responsible for or personally participated in, creating and implementing these unconstitutional polices, practices, and customs, or for ratifying and adopting them. Further, Defendants are responsible for training and supervising the employees of the Detention Facility, whose conduct has injured and continues to injure HRDC.

39. Defendants' actions and inactions were and are impermissibly motivated, and were and are all committed under color of state law with deliberate indifference to HRDC's rights.

40. Defendants' actions and inactions were and are undertaken with reckless disregard for Plaintiff's rights and/or motivated by ill motive and intent, and were and are all committed under color of law with deliberate indifference to HRDC's rights.

41. Plaintiff will continue to send its books and magazines to subscribers, customers, and other individuals imprisoned at the Detention Facility.

42. Defendants' unconstitutional policy, practices, and customs continue to violate HRDC's rights, and they were and are the moving force behind the injuries HRDC suffered as a direct result of the constitutional violations. As a result, HRDC has no adequate remedy at law.

43. Defendants' conduct prohibiting or not delivering HRDC's mailed publications and correspondence to persons incarcerated at the Detention Facility violates the First Amendment by censoring HRDC's freedom of speech and expression, and has a chilling effect on future speech and expression directed at the persons incarcerated at the Detention Facility.

44. HRDC is entitled to declaratory relief as well as injunctive relief prohibiting Defendants from refusing to deliver publications from HRDC and other similarly-situated senders not associated with Amazon or Barnes & Noble, without legal justification, and prohibiting Defendants from censoring mail without due process of law.

**FIRST CLAIM FOR RELIEF**
*(Violations of the First Amendment (Free Speech)—42 U.S.C. § 1983)*

45. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 44 of the Complaint as if fully set forth herein.

46. Defendants' acts described above constitute violations of HRDC's right to communicate with persons incarcerated at the Detention Facility under the First Amendment to the United States Constitution.

47. The conduct of Defendants was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

48. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

49. Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

50. HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants. HRDC also seeks punitive damages solely against the individual Defendants in their individual capacities.

**SECOND CLAIM FOR RELIEF**
*(Violation of the Fourteenth Amendment (Due Process)—42 U.S.C. § 1983)*

51. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. HRDC has a constitutionally-protected liberty interest in communicating with persons incarcerated at the Detention Facility by sending publications and correspondence to them via the United States Postal Service, a right clearly established under existing case law.

53. HRDC has a right under the Due Process Clause of the Fourteenth Amendment to receive notice and an opportunity to object and/or appeal Defendants' decisions to prevent the publications and correspondence mailed by HRDC from reaching the incarcerated persons at the Detention Facility to whom they were mailed.

54. Defendants have failed to give HRDC sufficient notice of the censorship of its publications and correspondence, and an opportunity to be heard with respect to that censorship. In doing so, Defendants have deprived and continue to deprive HRDC of liberty and property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

55. The conduct of Defendants was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

56. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

57. Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

58. HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants.  HRDC also seeks punitive damages solely against the individual Defendants in their individual capacities.

**THIRD CLAIM FOR RELIEF**
*(Violation of the right to free speech—California Constitution Art. I, Sec. 2)*

59. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60. The acts described above constitute violations of HRDC's speech rights under Article 1, Section 2 of the California Constitution and have caused damage to HRDC, and will continue to cause damage.

61. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

62. As a result of the conduct of Defendants, HRDC seeks declaratory and injunctive relief against all Defendants.

**FOURTH CLAIM FOR RELIEF**
*(Violation of the right to due process —California Constitution Art. I, Sec. 7)*

63. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 62 of the Complaint as if fully set forth herein.

64. By failing to give HRDC sufficient notice of the censorship of its publications and correspondence and an opportunity to be heard with respect to that censorship, Defendants have deprived and continue to deprive HRDC of liberty and property without due process of law, in violation of Article I, Section 7 of the California Constitution, and have caused damage to HRDC, and will continue to cause damage.

65. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the

moving force of the violations.

66. As a result of the Defendants' conduct, HRDC seeks declaratory and injunctive relief against all Defendants.

### FIFTH CLAIM FOR RELIEF
*(Violations of the Bane Act—California Civil Code Sec. 52.1)*

67. HRDC re-alleges and incorporates the allegations of paragraphs 1 through 66 of the Complaint as if fully set forth herein.

68. By their actions as described above, Defendants, acting in conspiracy and/or in concert, with threat, intimidation, and/or coercion, violated HRDC's rights under California Civil Code § 52.1 and interfered with the exercise or enjoyment of HRDC's clearly established rights secured by the Constitution and laws of the United States and Constitution and laws of California. Defendants' actions have caused actual damages to HRDC within the meaning of California Civil Code §§ 52 and 52.1.

69. The conduct of Defendants described above was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

70. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

71. As a proximate result of the conduct of Defendants, HRDC is also entitled to injunctive relief and an award of exemplary damages, civil penalties, and attorneys' fees, as provided by California Civil Code §§ 52 and 52.1.

### REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests relief as follows:

1. A declaration that Defendants' policies, procedures, customs, and practices violate the First and Fourteenth Amendments to the United States Constitution; Article 1, Section 2 and Article 1, Section 7 of the California Constitution; and California Code Section 52.1;

2. A preliminary and permanent injunction preventing Defendants and their employees, agents, and any and all persons acting in concert with them from further violation of HRDC's civil rights under the First and Fourteenth Amendments to the United States Constitution; Article 1, Section 2 and Article 1, Section 7 of the California Constitution; and California Code Section 52.1; and providing other equitable relief;

3. Nominal damages for each violation of HRDC's rights by the Defendants;

4. Compensatory damages in an amount to be proved at trial;

5. Punitive damages against the individual Defendants in an amount to be proved at trial;

6. Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and under other applicable law, including but not limited to California Civil Code § 52.1 and California Code of Civil Procedure § 1021.5; and

7. Any other relief that this Court deems just and equitable.

Respectfully submitted,

DATED: January 10, 2025     ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ *Marc J. Shinn-Krantz*
Marc J. Shinn-Krantz

DATED: January 10, 2025     HUMAN RIGHTS DEFENSE CENTER

By: /s/ *Jonathan P. Picard*
Jonathan P. Picard
\* *Pro Hac Vice* application to be filed

Attorneys for Plaintiff
HUMAN RIGHTS DEFENSE CENTER